**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOY COHEN | : | |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 07-1518 (WHW) |
| | : | |
| CHASE BANK, N.A. and MANN BRACKEN, LLC, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

Plaintiff, Joy Cohen ("Cohen"), and Defendant, Chase Bank N.A. ("Chase"), each move for summary judgment. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motions are decided without oral argument. Cohen's motion is denied. Chase's motion is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Cohen is a resident of Bergen County, New Jersey. (Compl. ¶ 6.) Chase is a national banking corporation headquartered in Delaware. (Compl. ¶ 7; Answer ¶ 7.) In September 1994, Cohen opened a revolving line of credit with First USA Bank, N.A., now known as Chase. (Answer ¶ 9; Chase Facts ¶ 2, n.1; Cohen Facts ¶ 4.)[1] Chase then mailed Cohen a packet

---

[1] Both Cohen and Chase appear to have made typographical errors in which they stated that Cohen opened her credit account in 1996 or 2004. (Compl. ¶ 9; Chase Facts ¶ 1.) However, both parties seem to agree that Cohen actually opened her account in 1994. (Answer ¶ 9; Chase Facts ¶ 2; Cohen Facts ¶ 4.)

FOR PUBLICATION

containing her credit card and a Cardmember Agreement ("the Agreement") setting forth the

terms of the relationship between Cohen and Chase.  (Chase Facts ¶ 2; Cohen Reply Facts ¶ 2;

Compl. Ex. A.)[2]  The Cardmember Agreement stated:

> Amendments: We can amend the terms of this Agreement at any time. We will notify
> you by mail of what these amendments are. Subject to the requirements of applicable
> law, any amendment to this Agreement will become effective at the time stated in our
> notice to you and the amended terms of this Agreement will apply to all outstanding
> unpaid indebtedness in your Account as well as new transactions.

(Chase Facts ¶ 3; Demczak Aff. Ex. B; Compl. Ex. A.)  Chase later amended the Cardmember

Agreement by mailing Cohen form notices of amendments to the Agreement.  Two of these

mailings – which are often popularly referred to as "bill stuffer" amendments – are pertinent to

this case.

First, in January 1998, Chase mailed Cohen a form notice entitled "Important Notice []

About Changes to Your [] Cardmember Agreement."  (Chase Facts ¶ 5; Cohen Reply Facts ¶ 5;

Cohen Facts ¶ 4.)  The relevant portions of this mailing read:

> ARBITRATION: Any claim, dispute or controversy ("Claim") by either you or us
> against the other, or against the employees, agents or assigns of the other, arising
> from or relating in any way to this Agreement or your Account, including Claims
> regarding the applicability of this arbitration clause or the validity of the entire
> Agreement, shall be resolved by binding arbitration by the National Arbitration
> Forum, under the Code of Procedure in effect by the National Arbitration Forum,
> under the Code of Procedure in effect at the time the Claim is filed. . . .
>
> Any arbitration hearing at which you appear will take place at a location within the
> federal judicial district that includes your billing address at the time the Claim is

---

[2] Cohen states that the initial Cardmember Agreements is "annexed [to the Complaint] as
either Exhibit A or Exhibit B."  (Compl. ¶ 10.)  Chase states that Exhibit A is the Cardmember
Agreement applicable to Cohen's account.  (Answer ¶ 10.)  The Court uses Exhibit A as the
Agreement.

FOR PUBLICATION

filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16. Judgment upon any arbitration award may be entered in any court having jurisdiction. This arbitration agreement applies to all Claims now in existence or that may arise in the future. . . .

IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT, AND/OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS, BUT EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION.

(Chase Facts ¶ 6; Cohen Facts ¶ 4; Compl. Ex. C.)  In March 2005, Chase mailed Cohen

another form notice.  (Chase Facts ¶ 9; Cohen Reply Facts ¶ 9.)  The relevant portions of

this mailing read:

**ARBITRATION**: The following replaces the section entitled "Arbitration": PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. . . .  IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND WE MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS AND OTHER REPRESENTATIVE ACTIONS). OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS DISCOVERY OR THE RIGHT TO APPEAL THE DECISION MAY BE MORE LIMITED. EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED. . . .

**Initiation of Arbitration**. The party filing a claim in arbitration must choose one of the following two arbitration administrators: American Arbitration or National Arbitration Forum. These administrators are independent from us. The administrator does not conduct the arbitration. Arbitration is conducted under the rules of the selected arbitration administrator by an impartial third party chosen in accordance with the rules of the selected arbitration administrator and as may be provided in this Arbitration Agreement. Any arbitration hearing that you attend shall be held at a place chosen by the arbitrator or arbitration administer within the

FOR PUBLICATION

> federal judicial district in which you reside at the time the Claim is filed or at
> some other place which you and we agree in writing.

(Chase Facts ¶ 10; Demczak Aff. Ex. F.)[3]  Both the January 1998 and the March 2005 notices

contained contact information for the arbitration administrators and suggested methods for

obtaining the applicable rules and forms of the administrators.  (Chase Facts ¶¶ 5-6, 9-10;

Compl. Ex. C; Demczak Aff. Exs. E, F.)

Cohen admits that both notices were mailed to her, that the notices were not returned to

Chase as undeliverable, and that she continued to use her credit card after the notices were

mailed to her.  (Cohen Reply Facts ¶¶ 4-9, 12-13; Cohen Facts ¶ 4.)

In April 2006, Chase mailed Cohen a monthly statement, which showed that she owed

$37,997.30 on her account, $3,780 of which was past due.  (Chase Facts ¶ 15; Cohen Reply Facts

¶ 15.)  Cohen then sent a letter to Chase, which she characterized as a "formal written Notice and

Demand to Chase for adequate assurance of performance with respect to the above listed

account."  (Chase Facts ¶ 16; Cohen Reply Facts ¶ 16; Demczak Aff. Ex. H.)  In the letter, Cohen

---

[3] Cohen states that she "denie[s]" that the March 2005 amendment contains this language (Cohen Reply Facts ¶ 10), though she apparently does not dispute the actual language of the March 2005 amendment.  Rather, she alleges that the arbitration claim sent to her in October 2006 by Mann Bracken, Chase's collection agent, failed to include the full language of the March 2005 amendment, and thereby deprived her of information regarding Chase's reimbursement of arbitration fees.  (Cohen Reply Facts ¶ 10; Cohen Opp. 7-8.)  This allegation is irrelevant to the language of the March 2005 amendment, which Cohen admits was mailed to her (Cohen Reply Facts ¶ 9), and is essentially an allegation against Mann Bracken, which Cohen has already dismissed as a Defendant in this suit.  The Court therefore accepts the language supplied by Chase as the contents of the March 2005 amendment.

The Court notes that Cohen's statement that the copy of the March 2005 amendment supplied by Chase is very difficult to read (Cohen Reply Facts ¶ 10), is a point well-taken.  (See Demczak Aff. Ex. F.)

-4-

**FOR PUBLICATION**

stated that she had "conducted a full and complete investigation into this matter" and was "of the opinion that Chase may be in breach of the terms of the Credit Card Agreement, by its failure to provide adequate and valuable consideration or full disclosure of the material terms and conditions of the alleged original agreement."  (Id.)  Cohen stated that she would only resume payments on the account upon Chase's signing of an attached affidavit, which affirmed, among other things, that Chase was in compliance with Generally Accepted Accounting Principles, the Sarbanes-Oxley Act of 2002, and the USA PATRIOT Act.  (Id.)  On June 2, 2006, Chase responded, stating that it complies with all applicable laws and that Cohen was obligated to pay the balance on her account, which by then had reached $39,024.39.  (Chase Facts ¶ 17; Cohen Reply Facts ¶ 17; Demczak Aff. Ex. I.)

In October 2006, Chase filed a claim against Cohen with the National Arbitration Forum ("NAF") to collect the balance owed on Cohen's account.  (Chase Facts ¶ 18; Cohen Reply Facts ¶ 18; Demczak Aff. Ex. J.)  On October 10, 2006, Chases's collection agent, Mann Bracken, LLC ("Mann Bracken"), sent a letter to Cohen informing her about the arbitration claim and offering her the opportunity to avoid arbitration by settling her account for 75% of the principal balance, which by then had reached $42,331.28.  (Id.)  Cohen then sent letters to Mann Bracken and to the NAF, in which she objected to the "'bogus' Arbitration ploy" and "unscrupulous ways" of Mann Bracken and the NAF; alleged that collection phone calls from Mann Bracken had "intensified to a level of pure Harassment;" asserted that the "'Forum' was biased and committing fraud upon the consumer;" stated that she would not participate in the NAF's "'Kangaroo Court;'" threatened to sue the NAF and the arbitrator for "mail and wire fraud"

FOR PUBLICATION

unless they agreed to "cease and desist this 'action' immediately;" and advised that "there is no

immunity for an arbitrator if an element of fraud exists." (Chase Facts ¶ 19; Cohen Reply Facts ¶

19; Demczak Aff. Ex. K.)

Cohen now states that she was "unfamiliar with what [she] was supposed to do" in

response to the arbitration notice and relied on her husband, who is not a lawyer, to help her draft

these letters. (Cohen Cert. ¶¶ 6-7.) She states that "[k]nowing what [she] know[s] now, [she]

would not have written those letters the same way," but maintains that the letters "make the point

that [she] disputed whether there was any binding contract to arbitrate any dispute with Chase –

which is what [she] understand[s] this case to be all about." (Id. at ¶ 8.)

On December 5, 2006, the NAF sent Chase and Cohen a letter scheduling a document

hearing, which included information regarding the arbitrator and the procedure for submitting

documents for the arbitrator's review. (Chase Facts ¶ 21; Cohen Reply Facts ¶ 21; Demczak Aff.

Ex. L.) On January 3, 2007, following a document hearing, the NAF awarded $45,956.28 to

Chase. (Chase Facts ¶¶ 22-23; Cohen Reply Facts ¶¶ 22-23; Compl. Ex. H; Demczak Aff. Ex.

M.)

Cohen brought this action against Chase and Mann Bracken on March 30, 2007. (Dkt 1.)

Cohen initially alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et.

seq., against Mann Bracken (Compl., Counts One through Six.), but settled with and voluntarily

dismissed Mann Bracken LLC on October 20, 2009 (Dkt 76). Only Cohen's claims against

Chase remain. Cohen alleges that no arbitration agreement exists between her and Chase. She

asks the Court to declare that no arbitration agreement exists and to permanently enjoin Chase

**FOR PUBLICATION**

from proceeding against her by way of arbitration, or, in the alternative, to vacate the arbitration award and permit a rehearing.  (Compl. Counts Seven and Eight, Prayer for Relief.)

On June 12, 2009, Chase moved for summary judgment.  (Dkt 45.)  Cohen opposed this motion, and, on June 15, 2009, filed her own motion for summary judgment.  (Dkt 51.)  These motions are now before the Court.

**STANDARD OF REVIEW**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  See Anderson at 248.  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  See Beard v. Banks, 548 U.S. 521, 529 (2006) (citing Celotex v. Catrett, 477 U.S. 317, 318 (1986)).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" in question."  Scott v. Harris at 380 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  To survive a motion for summary judgment, a nonmovant must present more than a mere scintilla of evidence in his favor.  Woloszyn v. County of Lawrence, 396 F.3d

**FOR PUBLICATION**

314, 319 (3d Cir. 2005).  It must set forth specific facts showing a genuine issue for trial, <u>Shields v. Zuccarini</u>, 254 F.3d 476, 481 (3d Cir. 2001), and may not rest upon the mere allegations or denials of its pleadings.

At the summary judgment stage, the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial.  <u>See</u> <u>Anderson</u>, 477 U.S. at 249.  In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.  <u>Curley v. Klem</u>, 298 F.3d 271, 276-7 (3d Cir. 2002).

"[W]here motions for summary judgment are made by both parties, if the pleadings present a genuine issue as to a material fact, there can be no valid summary judgment of the disputed facts." <u>Tomalewski v. State Farm Life Ins. Co.</u>, 494 F.2d 882, 884 (3d Cir. 1974) (citations omitted).  As the Eight Circuit has stated, "Summary judgment should be granted sparingly, and we do not assume that no material facts remain in dispute simply because both parties moved for summary judgment." <u>Matter of Citizens Loan and Sav. Co.</u>, 621 F.2d 911, 913 (8th Cir. 1980) (citations omitted).  Rather, "[t]he court must rule on each motion separately in determining whether each judgment may be entered in accordance with applicable principles. Indeed, both motions should be denied if both parties fail to meet their burden." <u>In re Kewanee Boiler Corp.</u>, 198 B.R. 519, 524 (Bkrtcy. N.D. Ill. 1996) (citing to <u>ITT Indus. Credit Co. v. D.S. America, Inc.</u>, 674 F. Supp. 1330, 1331 (N.D. Ill.1987)).

**DISCUSSION**

**FOR PUBLICATION**

The parties raise two issues on summary judgment: (i) whether there existed a valid agreement to arbitrate, *i.e.*, the question of "arbitrability," and (ii) if so, whether the arbitration award in this case is valid and enforceable.  The Court considers each issue.

## I. <u>Arbitrability</u>

Cohen contends that she never entered into an arbitration agreement with Chase.  She seeks "a declaration that no arbitration agreement exists" and "a permanent injunction barring [Chase] from proceeding against [Cohen] by way of arbitration."  (Compl. ¶ 39, Prayer for Relief.)  Chase moves for summary judgment on this issue, seeking an entry of judgment confirming the arbitration award plus interest that has accrued since January 2, 2007.  (Chase Notice of Motion.)  Cohen opposes Chase's motion, and also moves for summary judgment on this issue.  (Cohen Opp. 6; Cohen Br. 32.)

*A. Propriety of Summary Judgment*

There is no genuine issue of material fact regarding the events giving rise to the alleged agreement to arbitrate.  Both Cohen and Chase admit Chase sent Cohen a Cardmember Agreement in 1994, that Chase sent Cohen form notices regarding arbitration amendments in 1999 and 2005, that the notices were not returned as undeliverable, that Cohen did not object to either of these amendments, and that Cohen continued to use her credit card after these amendments were sent.  (Compl. Ex. A; Chase Facts ¶¶ 2, 5-6, 8-10, 12-13; Cohen Facts ¶ 4; Cohen Reply Facts ¶¶ 2, 5-6. 8-10, 12-13; Compl. Exs. A, C; Demczak Aff. Exs. B, E, F.)[4]

---

[4]  Despite these admissions, Cohen denies receipt of the Cardmember Agreement (Compl. ¶ 11), although she does not deny receipt of the actual credit card, which, pursuant to Chase's standard practice, is always sent in the same packet as the Agreement (Chase Facts ¶ 2).  Cohen

**FOR PUBLICATION**

Indeed, Cohen specifically states that "[t]here are no genuine issues of material fact concerning the purported formation of an arbitration contract" (Cohen Br. 18), and asks the Court to decide the arbitrability issue as a matter of law.

Based on the pleadings, affidavits, and exhibits submitted by both parties, the Court is satisfied that there is no dispute as to the material facts regarding the alleged existence of a contractual obligation to arbitrate.  This issue is fit for summary judgment.

*B. Judicial Review of Questions of Arbitrability*

The Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  Howsam v. Reynolds, 537 U.S. 79, 83 (2002) (citations omitted).  Although the Supreme Court "has long

---

also denies receipt of the notice amendments (Compl. ¶ 16).  Presumably, Cohen intends the Court to infer that all of these documents were lost in the mail, and to find a genuine issue of material fact that will prevent summary judgment on the arbitrability issue.  Indeed, in an unrelated New Jersey state court case involving a dispute between Cohen and another credit card company, Cohen similarly denied receiving "bill stuffer" amendments to her cardmember agreement, and the Appellate Division found her express denial of receipt to be a genuine issue of material fact that rendered summary judgment inappropriate.  FIA Card Services, N.A. v. Cohen, 2009 WL 1675533, *3 (N.J. Super. A.D. 2009) (unpublished opinion).

However, in this case, no reasonable jury could find that there is a genuine issue of material fact regarding whether Cohen received the Agreement or the amendments.  Cohen admits that the Agreement was mailed to her (Cohen Reply Facts ¶ 2), includes what she believes to be a copy of the Agreement as an exhibit to her Complaint (Compl.¶ 10, Ex. A), and states that her "receipt of the initial agreement is not relevant" to this case (Cohen Reply Facts ¶ 2).  Cohen also admits that the "bill stuffer" amendments were mailed to her and were not returned as undeliverable (Cohen Reply Facts ¶¶ 4-9, 12), and she includes what she believes to be copies of these amendments as exhibits to her Complaint (Compl. ¶¶ 15-16, Exs. C-E).  Moreover, her statement that she "do[es] not recall receiving" the amendments (Cohen Cert. ¶ 4), is not probative of her actual non-receipt of the amendments.

Accordingly, this Court concludes that, despite Cohen's denials of receipt, there remains no disputed fact that is both genuine and material, and summary judgment is appropriate.

FOR PUBLICATION

recognized and enforced a liberal federal policy favoring arbitration agreements, . . . the question whether the parties have submitted a particular dispute to arbitration, *i.e.*, 'the question of arbitrability,' is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." Id. (citations omitted). "Thus, a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." Id. at 84 (citations omitted). The Supreme Court has held that, "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally. . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

The Supreme Court has clarified that, "where a contract contains an arbitration clause, there is a presumption of arbitrability [and d]oubts should be resolved in favor of coverage." AT&T Tech., Inc. v. Comm'n Workers of Am., 475 U.S. 643, 650 (1986). Finally, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." AT&T at 649.

*C. Validity of "Bill Stuffer" Agreements to Arbitrate*

Cohen argues that Chase "has not met its burden to establish that the parties agreed to arbitrate"(Cohen Opp. 6), because the "bill stuffer" amendments to her Cardmember Agreement – which created the alleged agreement to arbitrate – are invalid. (Cohen Br. 16.) Cohen appears to contend that the amendments are invalid because (1) New Jersey law controls the interpretation of the Cardmember Agreement, and (2) under New Jersey law, the Agreement is unenforceable. The Court addresses each of these contentions.

FOR PUBLICATION

    1. <u>Applicable Law</u>

    *a. Choice-of-Law Clause*

    In the original Cardmember Agreement, which occupies one 8½ x 11 page, the following

statement appears at the bottom right-hand corner of the page: "**GOVERNING LAW: THIS**

**AGREEMENT AND YOUR ACCOUNT [] WILL BE GOVERNED BY AND**

**INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF**

**DELAWARE AND, AS APPLICABLE, THE LAWS OF THE UNITED STATES OF**

**AMERICA.**"  (Demczak Aff. Ex. B; Compl. Ex. A.)  Cohen contends that this choice-of-law

clause is invalid and that New Jersey law – rather than Delaware law – governs the dispute.[5]

    "In evaluating whether a contractual choice-of-law clause is enforceable, federal courts

sitting in diversity apply the choice-of-law rules of the forum state, which in this case is New

Jersey."  <u>Homa v. American Express Co.</u>, 558 F.3d 225, 227 (3d Cir. 2009) (citations omitted).

Because this Court's research has disclosed no case in which the New Jersey Supreme Court has

analyzed a choice-of-law clause in a credit cardmember agreement under New Jersey choice-of-

law rules, this Court must "predict how the Supreme Court of New Jersey would rule in this

case."  <u>Hulmes v. Honda Motor Co., Ltd.</u>, 924 F. Supp. 673, 678 (D.N.J. 1996).[6]  "In making its

---

    [5] In her original brief in support of summary judgment, Cohen appears to ignore the choice-of-law provision in the Agreement and assumes that New Jersey law applies to the determination of whether an agreement to arbitrate was formed.  (Cohen Br. 15-16.)  In her reply brief, Cohen acknowledges the choice-of-law provision, but argues that, under <u>Discover Bank v. Shea</u>, 827 A.2d 358 (N.J. Super. Ct. L. Div. 2001), it is invalid.  (Cohen Re. 6.)

    [6] Such prediction is necessary because, although the New Jersey Supreme Court accepts certified questions of state law from the Third Circuit Court of Appeals, N.J. R. 2:12 A-1-8

-12-

**FOR PUBLICATION**

prediction of state law, this Court is guided, but not bound, by the rulings of the lower New

Jersey appellate courts, which may provide the best indicia of how the state's highest court might

decide an issue." Hulmes at 678 (quotation marks and citations omitted). "Decisions of the

state's trial courts may also be considered to help to illuminate the subject." Hulmes at 678

(citing to 19 Charles A. Wright, et al., Federal Practice and Procedure § 4507, at 96 (1982)).

Finally, this Court may also "consider all available legal sources, including the Restatements of

the Law, treatises, law review commentaries[,] decisions from other jurisdictions [and] policies

underlying the applicable legal doctrines and the doctrinal trends indicated by these policies." Id.

at 678 (quotation marks and citations omitted). "In any event, it is improper for the district court

to abstain from deciding an issue, even when there is no state law to guide its prediction."

Hulmes at 678-9 (citations omitted).

  *b. New Jersey Choice-of-Law Rules*

   The New Jersey Supreme Court has summarized New Jersey choice-of-law rules as

follows: "Ordinarily, when parties to a contract have agreed to be governed by the laws of a

particular state, New Jersey courts will uphold the contractual choice if it does not violate New

Jersey's public policy." North Bergen Rex Transport, Inc. v. Trailer Leasing Co., a Div. of Keller

Systems, Inc., 158 N.J. 561, 568-9 (1999) (quotations marks and citations omitted).[7]

_____

(2009), it does not accept certified questions from the District Court for the District of New
Jersey.

  [7] Stated differently, a choice-of-law clause will be upheld "unless either: (a) the chosen
state has no substantial relationship to the parties or the transaction and there is no other
reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be

FOR PUBLICATION

Citing to <u>Discover Bank v. Shea</u>, 827 A.2d 358 (N.J. Super. Ct. L. Div. 2001), Cohen contends that the choice-of-law clause in the Agreement is invalid because an inconspicuous choice-of-law provision in a contract of adhesion violates New Jersey public policy.  (Cohen Re. 6.)  As an initial matter, the choice-of-law clause in the Agreement here was not inconspicuous, as it appeared in bold capital letters at the bottom right hand corner of a one-page document and would have been clearly visible to anyone reading (or perhaps even skimming) the Agreement. <u>Compare</u> <u>Shea</u> at 363 (stating that the choice-of-law provision was not conspicuous because it was in the same font and print as the body of the agreement.)

Moreover, although <u>Shea</u>'s facts are similar to the facts in this case, <u>Shea</u> is the decision of a New Jersey state trial court, and is neither binding nor necessarily persuasive in this Court's analysis of applicable New Jersey law.  <u>Hulmes v. Honda Motor Co., Ltd.,</u> 924 F. Supp. 673, 678 (D.N.J. 1996) (citing <u>Pa. Glass Sand Corp. v. Caterpillar Tractor Co.,</u> 652 F.2d 1165, 1167 (3d Cir.1981)).  The <u>Shea</u> court did not rely on New Jersey Supreme Court precedent to support its holding, but instead disposed of the choice-of-law issue by referring to another New Jersey trial

_____

contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issues and which *** would be the state of the applicable law in the absence of an effective choice of law by the parties."  <u>Instructional Systems, Inc. v. Computer Curriculum Corp.,</u> 130 N.J. 324, 342 (1992) (citing Restatement (Second) of Conflicts of Laws § 187 (1969)).  <u>Accord</u> <u>North Bergen Rex</u> at 568-9 (1999).

With regard to exception (a), the New Jersey Supreme Court has held that a "substantial relationship" exists with a state when one of the parties is headquartered in that state. <u>Instructional Systems Inc.</u> at 342; <u>North Bergen Rex</u> at 569.  In this case, a "substantial relationship" with Delaware exists because Chase is headquartered in Delaware.

The analysis under exception (b) is equivalent to the analysis of whether a choice-of-law clause violates New Jersey public policy.  <u>See</u> <u>Instructional Systems, Inc.</u> at 342-3.  The Court undertakes this public policy analysis in the following section.

**FOR PUBLICATION**

court case, <u>Fairfield Leasing Corp. v. Techni-Graphics, Inc.</u>, 607 A.2d 703, 707 (N.J. Super. Ct.

L. Div. 1992).[8] <u>Shea</u> at 363-4. <u>Fairfield Leasing</u>, in turn, relied on scholarly writing to conclude

that an inconspicuous choice-of-law clause in a contract of adhesion is contrary to New Jersey

public policy. <u>Fairfield Leasing</u> at 707 ("to deviate from the law as described by Professor Leflar

would be in violation of the public policy of this State.")[9]

Because <u>Shea</u> is a state trial court case, and because neither <u>Shea</u> nor the case on which it

relies are based on New Jersey Supreme Court precedent, this Court does not look to <u>Shea</u> as an

indication of New Jersey public policy. Fortunately, two recent New Jersey Supreme Court

decisions provide guidance.

    *c. New Jersey Public Policy*

---

[8] The <u>Shea</u> court acknowledged that "[n]o New Jersey case has directly decided the issues of validity of a unilateral 'bill stuffer' change to a credit card agreement," <u>Shea</u> at 360, and proceeded to base its rejection of such amendments on an adoption of the reasoning and holding of a California state appellate case that had rejected such amendments. <u>Shea</u> at 361-2 (citing to <u>Badie v. Bank of America</u>, 67 Cal. App. 4th 779 (Cal. Ct. App. 1998)). *After* deciding that "bill stuffer" amendments are invalid under New Jersey law, the <u>Shea</u> court addressed the Delaware choice-of-law provision in the credit cardmember agreement at issue – an uncommon ordering, as choice-of-law decisions logically precede substantive decisions made under the chosen law.

[9] <u>Fairfield Leasing</u> did define the public policy of New Jersey as "the public policy of this State as that concept has been articulated in <u>Henningsen</u>," citing to the New Jersey Supreme Court opinion of <u>Henningsen v. Bloomfield Motors, Inc.</u>, 32 N.J. 358 (1960). <u>Fairfield Leasing</u> at 707. However, <u>Henningsen</u> did not address choice-of-law provisions in any way and only spoke generally of the potential hazards of contracts of adhesion. The <u>Henningsen</u> court held that, in the particular case before it, a disclaimer of an implied warranty of merchantability by a car dealer was "violative of public policy and void." <u>Henningsen</u> at 408.

**FOR PUBLICATION**

New Jersey has a "strong public policy favoring the settlement of disputes through arbitration."  Hojnowski v. Vans Skate Park, 187 N.J. 323, 343 (2006).  Here, the Court must decide whether an arbitration agreement added to a consumer contract of adhesion through "bill stuffer" amendments is consistent with New Jersey public policy.

Upholding the Delaware choice-of-law provision in this case would result in the valid inclusion of an arbitration clause in the Agreement because, under Delaware law, "bill stuffer" amendments to credit cardmember agreements – including those adding terms relating to arbitration – are valid.  5 Del. C. § 952(a).[10]  Because the consequence of upholding the Delaware choice-of-law provision is the addition of a valid arbitration clause to the Agreement, this Court looks to recent New Jersey Supreme Court cases that have examined the public policy implications of arbitration clauses contained in contracts of adhesion.

The New Jersey Supreme Court has stated that "adhesive consumer contracts [] are ordinarily enforceable."  Muhammad v. County Bank of Rehoboth Beach, 189 N.J. 1, 19 (2006), cert. denied, 549 U.S. 1338 (2007).  Because contracts of adhesion "invariably evidence some characteristics of procedural unconscionability," "the determination that a contract is one of

---

[10] "Unless the agreement governing a revolving credit plan otherwise provides, a bank may at any time and from time to time amend such agreement in any respect, whether or not the amendment or the subject of the amendment was originally contemplated or addressed by the parties or is integral to the relationship between the parties. Without limiting the foregoing, such amendment may change terms by the addition of new terms or by the deletion or modification of existing terms, whether relating to. . . arbitration or other alternative dispute resolution mechanisms. . . .   Any notice of an amendment sent by the bank may be included in the same envelope with a periodic statement or as part of the periodic statement or in other materials sent to the borrower."  5 Del. C. § 952(a).

FOR PUBLICATION

adhesion [] 'is the beginning, not the end, of the inquiry' into whether a contract, or any specific

term therein, should be deemed unenforceable based on policy considerations." Id. at 15-16

(citations omitted).  This inquiry usually involves a fact-specific examination of the four Rudbart

factors, which look "not only to the take-it-or-leave-it nature" of a contract of adhesion, "but also

to: [(1)] the subject matter of the contract, [(2)] the parties' relative bargaining positions, [(3)] the

degree of economic compulsion motivating the 'adhering' party, and [(4)] the public interests

affected by the contract." Delta Funding Corp. v. Harris, 189 N.J. 28, 40 (2006) (quoting

Rudbart v. N.J. Dist. Water Supply Comm'n, 127 N.J. 344, 345 (1992), cert. denied sub nom

First Fidelity Bank, N.A. v. Rudbart, 506 U.S. 871 (1992)).

(1) The First Three Rudbart Factors

In Delta Funding Corp. v. Harris, the New Jersey Supreme Court examined a sub-prime

loan secured by a mortgage on a consumer's house, Harris at 35, which it found to be a contract

of adhesion. Harris at 40.  The New Jersey Supreme Court held that, although the first three

factors "suggest a high level of procedural unconscionability," these factors did not, by

themselves, render the contract unenforceable. Id. at 40-41.  In Muhammad v. County Bank of

Rehoboth Beach, the New Jersey Supreme Court examined a pay day loan agreement, which it

found to be a contract of adhesion. Muhammad at 19.  Again, the New Jersey Supreme Court

held that, although the first three Rudbart factors "indicate a degree of procedural

unconscionability," these factors were insufficient to make the contract unenforceable. Id.   In

-17-

**FOR PUBLICATION**

both cases, the New Jersey Supreme Court focused on the fourth factor, the public interest, in analyzing the disputed clause in each contract.

The present Credit Cardmember Agreement suggests less procedural unconscionability under the first three Rudbart factors than were present in the contracts in Harris and Muhammad. A consumer applying for a credit card agrees to make monthly payments to a credit card company for money she will spend in the future (usually up to an initial credit limit, such as $10,000). Such an applicant is presumably subject to less economic compulsion than the consumer in Harris, who felt sufficient financial need to take out a $37,000 loan secured by her house, which she had previously owned outright, Harris at 35-6, and is also presumably subject to less economic compulsion than a consumer who feels sufficient financial urgency to enter into a pay day loan agreement like the one at issue in Muhammad. Moreover, a credit card applicant is presumably in a stronger bargaining position than the consumer in Harris, an elderly woman with a sixth-grade education whose house was apparently her only asset of sufficient value to secure the loan, Harris at 35-6, and is also presumably in a better bargaining position than a pay day loan consumer who experiences the "gross disparity in relative bargaining positions [that is] self-evident from the very nature of the payday loan contract between a consumer and a financial entity." Muhammad at 18.

Following the New Jersey Supreme Court's analyses in Harris and Muhammad, this Court predicts that, even assuming the existence of some elements of procedural unconscionability in the first three Rudbart factors, the New Jersey Supreme Court would find

-18-

**FOR PUBLICATION**

that the Agreement at issue in this case is not unenforceable on those grounds, and that its

disputed arbitration clause must be examined with respect to the fourth factor, the public interest.

(2) The Fourth <u>Rudbart</u> Factor: The Public Interest

In <u>Delta Funding Corp. v. Harris</u> and <u>Muhammad v. County Bank of Rehoboth Beach</u>, the

New Jersey Supreme Court examined two elements of the arbitration clauses at issue when

conducting its public interest analysis: a fee-shifting provision and a class-action waiver.

i. Fee-Shifting Provision

In <u>Harris</u>, the New Jersey Supreme Court considered the fee-shifting provisions of an

arbitration agreement that allowed an arbitrator to ultimately place the costs of arbitration,

appeal, and attorneys' fees on a consumer – even when the consumer is the prevailing party, and

despite the existence of New Jersey statutory rights that allow the prevailing party in such actions

to recover costs and attorneys' fees. <u>Harris</u> at 41-46. The <u>Harris</u> court held that these fee-shifting

provisions create a "substantial and unreasonable deterrent to the vindication of the statutory

rights" of the consumer, <u>Harris</u> at 43, and that such deterrence is contrary to the public interest,

which was the dispositive factor of its <u>Rudbart</u> analysis. <u>Harris</u> at 40-1. It found such provisions

to be unconscionable, unenforceable, and severable from the arbitration agreement.

The arbitration clause in this case contains the following language regarding fees:

> Each party will bear the expense of the fees and costs of that party's attorneys,
> experts, witnesses, documents, and other expenses, regardless of which party
> prevails, for arbitration and any appeal (as permitted below), except that the arbitrator

-19-

**FOR PUBLICATION**

> shall apply any applicable law in determining whether a party should recover any or all fees and costs from another party."

(Demczak Aff. Ex. F; Cohen Opp. 8.)

Because the fee-shifting language in this clause is limited by the "any applicable law" language, the arbitrator does not have "unfettered discretion to allocate the entire cost of arbitration to a consumer" when a prevailing consumer has a statutory right to recover costs and attorneys' fees. <u>Harris</u> at 41. Rather, a prevailing consumer is entitled to recover fees and costs when permitted by applicable law. Moreover, Cohen does not even contend that the possibility of fee-shifting deterred her from defending the claim.[11] Accordingly, this Court predicts that the New Jersey Supreme Court would find that this fee-shifting language is not contrary to New Jersey public policy and does not render the arbitration clause unenforceable. <u>Harris</u> at 47.

### ii. Class-Action Waiver

In <u>Muhammad</u>, the New Jersey Supreme Court considered class-arbitration waivers found in consumer contracts of adhesion "in a setting in which disputes between the contracting parties *predictably* involve small amounts of damages," *e.g.*, the setting of pay day loan contracts.

---

[11] Cohen does contend that she was not aware of language explaining Chase's reimbursement of costs at the time when the arbitration claim was brought. This language states that Chase will reimburse the consumer for the initial arbitration fee up to $500, will pay the arbitration costs for the first two days of the hearing, and may reimburse filing fees and other fees. (Demczak Aff. Ex. F; Cohen Opp. 8.) Cohen's allegation is that Mann Bracken failed to apprise her of this language in its communications to her (<u>see</u> Note 3), and that she "would have sought an in-person hearing" had she been aware of it. (Cohen Opp. 8.) Mann Bracken is no longer a defendant in this suit, and Cohen's speculation regarding what she "would have" done has no bearing on the Court's consideration of the actual language of the arbitration clause.

FOR PUBLICATION

Muhammad at 20 (citation omitted) (emphasis in original).  Because it is unlikely that each

individual consumer would pursue her small claim in a separate action with the lender, financial

entities would gain "an advantage which would be almost equivalent to closing the door to all

small claimants."  Muhammad at 20.  The Muhammad court held that, in such circumstances,

waiver of the right to class-wide action is contrary to the public interest, which was "the most

important" Rudbart factor in its analysis.  Muhammad at 19-20; Homa at 230-21.  It found such

waivers to be unconscionable and unenforceable.  However, because it found the body of the

agreement to be valid, the Muhammad court severed the infirm class-action waiver and

remanded the agreement to the trial court for resolution.  Muhammad at 26-27.

> The arbitration clause in this case contains such a class-action waiver:
>
>> If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action.  Neither you nor we agree to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed on such basis.  This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, and Claim between us related to the issues raised in such lawsuit will be subject to an individual arbitration claim if either you or we object.

(Demczak Ex. E.)

> Class-wide waivers – even those found in contracts of adhesion – are not unconscionable

per se, and at least one such waiver has been upheld by the New Jersey Supreme Court.  Harris at

47.  However, the fulsome rationale voiced by Justice LaVecchia in Muhammad causes this

Court to conclude that the present class-action waiver is contrary to New Jersey public policy and

unenforceable.  As with the adhesive agreement in Muhammad, this Court finds that the

**FOR PUBLICATION**

remainder of the Agreement between Cohen and Chase is not contrary to New Jersey public

policy and is entitled to judicial resolution.  Accordingly, the Court severs the class-action waiver

from the Agreement.  Moreover, the Court notes that, even if it were to adopt the conclusion of

Justice LaVecchia, writing for the majority in <u>Harris</u>, that the class-action waiver is not

unconscionable, the remainder of the Agreement in this matter would still be subject to judicial

resolution.

(3) Conclusion

This Court has found no indication that choice-of-law clauses in contracts of adhesion,

such as credit cardmember agreements, violate New Jersey public policy as articulated by the

New Jersey Supreme Court.  With the exception of the class-action waiver, which this Court

severs from the Agreement, the Court has also found no indication that the consequence of

upholding a Delaware choice-of-law clause in this case violates New Jersey public policy as

articulated by the New Jersey Supreme Court.  Accordingly, this Court predicts that, under New

Jersey choice-of-law rules, the New Jersey Supreme Court would uphold the choice-of-law

clause in the Agreement and apply Delaware law to the Agreement.  Under Delaware law, the

"bill stuffer" amendments and, consequently, the agreement to arbitrate – with the exception of

the class-action waiver – are valid.

2. <u>Enforceability</u>

Relying on the <u>Shea</u> decision, Cohen argues that the "bill stuffer" amendments – which

formed the agreement to arbitrate – are invalid under New Jersey contract law because Cohen did

**FOR PUBLICATION**

not explicitly assent to them and because use of a credit card following notice of an amendment

does not constitute assent.  (Cohen Br. 15-17; <u>Shea</u> at 360, 362, 365.)[12]  However, the Court need

not reach this argument because it finds that Delaware, rather than New Jersey, law applies to the

contract, and, under Delaware law, the "bill stuffer" amendments are valid.

## II. <u>Validity of the Arbitration Award</u>

Cohen contends that, even if the Court finds the existence of a valid agreement to

arbitrate, it should set aside the arbitration award.  (Compl. ¶ 41.)  Both parties agree that there is

no genuine issue of material fact regarding the arbitration award, as both Chase and Cohen admit

that the National Arbitration Forum entered an award for Chase in the amount of $45,956.28.

(Cohen Facts ¶ 14; Chase Facts ¶ 22; Cohen Br. 13; Compl. Ex. H; Demczak Aff. Ex. M.)  There

being no dispute as to the material facts regarding the validity of the arbitration award, the issue

is fit for summary judgment.

Cohen argues that the Court should not enforce the arbitration award because (i) Chase

failed to comply with the venue provisions of the Fair Debt Collection Practices Act ("FDCPA");

(ii) Chase failed to comply with the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16; . . . .and

(iii) the "arbitration was not conducted in accordance with the parties' agreement that a hearing

take place within the District of New Jersey by a New Jersey attorney."  (Compl. ¶ 41, Prayer for

---

[12] Cohen also cites cases from other jurisdictions that have held that "bill stuffer" amendments do not validly amend credit cardmember agreements.  (Cohen Br. 16-17 (citing to decisions construing California, Virginia, Rhode Island, Arizona, and Montana law).)  These decisions are unavailing, as the analysis of the choice-of-law clause in the Agreement at issue must be based on the public policy of New Jersey, not the public policy of other states.

FOR PUBLICATION

Relief.)[13]  The Court need not reach these arguments because "[i]ssues of procedural arbitrability, i.e., whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."  Howsam v. Reynolds, 537 U.S. 79, 85 (2002) (citations omitted).  Having decided the gateway question of arbitrability in the affirmative, the Court defers to the arbitrator on questions regarding venue under the FDCPA, compliance with the FAA, physical location of the hearing and the arbitrator, cost-reimbursement language, and other similar issues raised by Cohen, as these are "procedural questions which grow out of the dispute and bear on its final disposition."  Howsam v. Reynolds at 84 (citations omitted).[14]

 Cohen also contends that the Court should not enforce the award because the arbitrator was "guilty of evident corruption [and] misconduct."  (Compl. ¶ 41, Prayer for Relief.)  The Court rejects this allegation as it is a naked assertion unclothed by factual evidence.

Finally, Cohen contends that, once she disputed the existence of an agreement to arbitrate, Chase should have discontinued arbitration until it could compel arbitration under the

_____

[13]  Although not mentioned in her Complaint, Cohen also asserts that there was a discrepancy between the cost-reimbursement language in the March 2005 amendment and the cost-reimbursement language included in the arbitration claim that she received from Chase's agent, Mann Bracken.  (Cohen Re. 7-9.)  This assertion is irrelevant to the motions now before the Court.  See Notes 3 and 11, above.

[14]  Such deference seems especially appropriate in light of Cohen's curious statement that "it would be improper for this Court to second-guess the arbitrator's basis for the award." (Cohen Reply Facts ¶ 14.)  Though Cohen may perhaps be referring only to the amount of the award, which was based on her underlying credit card debt to Chase, the statement applies equally to the procedural issues that may have affected the arbitrator's final decision.

-24-

**FOR PUBLICATION**

Federal Arbitration Act.  (Cohen Re. 8.)  This contention is without merit.  The statutory

provision relied on by Cohen states that a party "aggrieved by the alleged failure, neglect, or

refusal of another to arbitrate under a written agreement for arbitration *may* petition [a district

court] for an order directing that such arbitration proceed" – not that it *must* do so.  9 U.S.C. § 4

(emphasis added).  Indeed, in the case offered by Cohen, <u>John Wiley & Sons, Inc. v. Livingston</u>,

376 U.S. 543 (1964), the aggrieved party *chose* to seek a court order compelling arbitration – but

it was not required to do so.  If Chase were required to seek a court order compelling arbitration

each time a consumer wrote a letter disputing the existence of an arbitration agreement, the

purposes of arbitration – including conservation of time and judicial resources – would be

defeated.  Rather, it was Cohen's prerogative to file suit to prevent Chase from proceeding with

the arbitration, and she chose not to do so.  She cannot now assert – in a suit filed after the

conclusion of arbitration – that it was Chase's duty to preemptively discontinue the arbitration

proceedings when it learned of her objection.

        The Court finds the arbitration award to be valid and confirms it.


**CONCLUSION**

        This Court predicts that the New Jersey Supreme Court would hold that the Delaware

choice-of-law clause in the Credit Cardmember Agreement between Cohen and Chase does not

violate New Jersey public policy, and should be upheld under New Jersey choice-of-law rules.

Under Delaware law, the notice amendments to the Agreement – the so-called "bill stuffer

amendments" – are valid and created an enforceable agreement to arbitrate.  Accordingly, with

**FOR PUBLICATION**

the exception of the class-action waiver contained in the agreement to arbitrate, the Court

upholds the Cardmember Agreement as amended by the "bill stuffer" amendments.  The January

2, 2007 National Arbitration Forum arbitration award of $45,956.28 to Chase, which was

awarded pursuant to an enforceable agreement to arbitrate, is valid and is affirmed.

       It is on this 20th day of January, 2010:

       ORDERED that the class-action waiver contained in the arbitration clause of the

Cardmember Agreement between Cohen and Chase is unenforceable and is severed from the

remainder of the Agreement.

       ORDERED that Plaintiff Joy Cohen's Motion for Summary Judgment is DENIED in its

entirety.

       ORDERED that Defendant Chases's Motion for Summary Judgment is GRANTED in its

entirety.

       ORDERED that the January 2, 2007 National Arbitration Forum arbitration award of

$45,956.28 to Chase is affirmed.

                  **s/ William H. Walls**
                  United States Senior District Judge